IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-00140-FL

| | |
|---|---|
| MAURICE EDWARD THOMPSON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-22, -24] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Maurice Edward Thompson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on November 18, 2011, alleging disability beginning October 21, 2011. (R. 11, 184-85). The claim was denied initially and upon reconsideration. (R. 11, 57-95). A hearing before the ALJ was held on January 7, 2014, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and

testified. (R. 28-56). On March 21, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 8-27). On August 11, 2015, the Appeals Council, after incorporating certain additional evidence into the record, denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 13). Next, the ALJ determined Claimant had the

3

severe impairments of degenerative disc disease, a personality disorder, and an affective disorder, as well as the nonsevere impairments of syncopal episodes and a history of alcohol abuse. (R. 13-14). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14-15).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform sedentary work[1] with the following limitations: the flexibility to alternate between sitting and standing every 30 minutes; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery; understanding, remembering, and carrying out simple instructions, which is defined to mean activity that is consistent with a reasoning level of two or three as defined in the Dictionary of Occupational Titles ("DOT"); working in proximity to, but not in coordination with, coworkers and supervisors; and working in a low stress setting, which is specifically defined to mean no fast paced production, only simple work related decisions, few or no changes in the work setting, and only superficial contact with the public. (R. 15-20). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely credible. (R. 17). At step four, the ALJ concluded Claimant was unable to perform any past relevant work. (R. 20). Nonetheless, at step five, upon

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 20-22).

Claimant contends the ALJ erred by (1) finding Claimant's impairments do not meet or medically equal Listings 1.04, 12.04, and 12.08, (2) finding Claimant has the RFC to perform a limited range of sedentary work, and (3) failing to accord appropriate weight to the opinion evidence of record. Pl.'s Mem. [DE-23] at 3, 11-20.

## V. DISCUSSION

### A. The ALJ's Consideration of Listings 1.04 (Disorders of the Spine), 12.04 (Affective Disorders), and 12.08 (Personality Disorders)

Claimant first contends the ALJ erred in finding that Claimant's physical and mental impairments do not meet or equal Listings 1.04, 12.04, and 12.08. Pl.'s Mem. [DE-23] at 11-13. Defendant contends that the ALJ properly found Claimant's impairments do not meet or equal a listing. Def.'s Mem. [DE-25] at 25-26.

To show disability under the listings, a claimant may present evidence either that the impairment meets or medically equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. §§ 404.1525, 404.1526. Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. §§ 404.1520(d), 404.1525(c)(3), 404.1526. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). In order to determine whether a medical impairment equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is

relevant to this finding. . . . [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). "For a claimant to qualify for benefits by showing that his . . . combination of impairments[] is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citation omitted). The Fourth Circuit has found error where there is evidence in the record that would support a finding that a claimant's impairment meets a listing, but the ALJ fails to provide a full explanation in support of a contrary determination. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (concluding the ALJ's "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings") (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). However, "[p]laintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (unpublished) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why h[is] medical impairments do, in fact, meet all of the elements of a given listed impairment," he fails to meet his burden. *Id.* (citing *Sullivan*, 493 U.S. at 530).

i.  **Listings 1.04 (Disorders of the Spine)**

Listing 1.04 refers generally to disorders of the spine. 20 C.F.R. pt. 404, subpt., P, app. 1, § 1.04. To satisfy Listing 1.04, a claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with one of the following:

6

1. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

2. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

3. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.*; *see Drotar v. Colvin*, No. 7:13-CV-265-FL, 2015 WL 965626, at *5 (E.D.N.C. Mar. 4, 2015) (unpublished) (discussing the criteria to meet or equal Listing 1.04).

The ALJ found Claimant had the severe impairment of degenerative disc disease and expressly considered whether his impairment met Listing 1.04, concluding that it did not. (R. 13-14). The ALJ found that the medical evidence does not establish the requisite evidence of nerve root compression (Listing 1.04A), spinal arachnoiditis (Listing 1.04B), or lumbar spinal stenosis resulting in an inability to ambulate as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(b)(2)(b) (Listing 1.04C). (R. 14). Claimant cites his degenerative disc disease, chronic bilateral knee pain, spinal stenosis, herniated/bulging discs, sciatica, chronic back pain, myalgias, chronic leg pain, sclerotic bone lesions, lumbrosacral neuritis/radiculitis, and chronic neck pain in support of the contention that his impairments satisfy the severity requirements of categories A and C. Pl.'s Mem. [DE-23] at 12 (citing R. 365-74, 380-88, 555). Claimant also notes that physical therapy in

November 2011 and epidural steroid injections in January 2012 provided no relief. *Id.* Notwithstanding the ALJ's finding that Claimant has degenerative disc disease, the evidence cited by Claimant fails to establish all elements of Listing 1.04.

With respect to the A criteria, the records cited by Claimant do not demonstrate the requisite evidence of nerve root compression. (R. 365-74, 380-88, 555). With respect to C criteria, Claimant has failed to present evidence of an inability to ambulate effectively. *See* 20 C.F.R. pt. 404, subpt., P, app. 1, § 1.00B.2.b(1), (2) ("Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," and examples of ineffective ambulation are "the inability to walk without the use of a walker, [or] two crutches or two canes."); *McAuley v. Colvin*, No. 7:12-CV-311-D, 2013 WL 7098724, at *9 (E.D.N.C. Dec. 13, 2013) (unpublished) ("[A]n inability to ambulate effectively means an inability to ambulate without the use of a device that requires *both* upper extremities" and the "use of a cane does not bring [the claimant] within the ambit of 1.04(C).") (emphasis in the original) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B.2.b(2)). Claimant has not asserted that he requires the use of a walker or two canes to ambulate. Neither has Claimant provided evidence of an "inability to walk a block at a reasonable pace on rough or uneven surfaces" or "the inability to climb a few steps at a reasonable pace with the use of a single hand rail," which may also establish ineffective ambulation. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B.2.b(2); *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 268 (D. Md. 2003) (noting "if [a claimant] who uses [only] one cane or one crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing") (quoting Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66

8

Fed. Reg. 58,010, 58,013 (Nov. 19, 2001) ("[W]e do not consider required use of one cane or crutch to automatically exclude all gainful activity. However, if someone who uses one cane or crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing.")).

To the extent Claimant argues his impairments are equivalent to the listing, he has "failed to present medical findings equal in severity to *all* the criteria" to the listing. *See Sullivan*, 493 U.S. at 531-32 ("A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment."); *Reynolds v. Astrue*, No. 3:11CV49, 2012 WL 748668, at *4 (W.D.N.C. Mar. 8, 2012) (unpublished) ("It was plaintiff's burden to demonstrate to the Commissioner at step three that his back impairment satisfied all of the criteria of the listing, 20 C.F.R.§ 404.1520, not simply that he had a back impairment."). Additionally, the ALJ noted Claimant's imaging studies revealed relatively mild disease in the cervical and lumbar spine, largely normal examinations, and indications from treatment providers that Claimant's presentation was inconsistent with imaging studies and that Claimant may be magnifying his symptoms. (R. 18) (citing R. 287-354, 593). The ALJ's findings in this regard additionally undercut any equivalence argument. Accordingly, Claimant has failed to demonstrate error regarding the ALJ's Listing 1.04 determination.

### ii. 12.04 (Affective Disorders) and 12.08 (Personality Disorders)

Listing 12.04 generally addresses disorders such as depression, mania, and bipolar disorder and is satisfied if an individual meets the A and B criteria, or the C criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. At issue here are the A and B criteria for depressive syndrome, Pl.'s Mem. [DE-23] at 12-13, which requires a showing of

> A. Medically documented persistence, either continuous or intermittent, of . . . [d]epressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; . . . AND B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

Listing 12.08 generally addresses personality disorders and is satisfied if an individual meets the A and B criteria. *Id.* § 12.08. The A criteria are

> Deeply ingrained, maladaptive patterns of behavior associated with one of the following: 1. Seclusiveness or autistic thinking; or 2. Pathologically inappropriate suspiciousness or hostility; or 3. Oddities of thought, perception, speech and behavior; or 4. Persistent disturbances of mood or affect; or 5. Pathological dependence, passivity, or aggressivity; or 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior[.]

*Id.* § 12.08A. The B criteria are identical to those in Listing 12.04. *Id.* § 12.08B.

The ALJ found Claimant's affective and personality disorders to be severe impairments (R. 13), but concluded that they did not meet or equal the severity requirements of Listings 12.04 or 12.08 (R. 14-15). The ALJ specifically found the B criteria not met, concluding that Claimant had mild restrictions in activities of daily living and moderate restrictions in social functioning and concentration, persistence, or pace with no episodes of decompensation of an extended duration.[2] (R. 14-15). Claimant takes issue with the ALJ's findings with respect to the A and B criteria, Pl.'s Mem. [DE-23] at 13, however, the Claimant's failure to establish the B criteria is dispositive here

---

[2] With respect to Listing 12.04, the ALJ also found the C criteria were not satisfied (R. 15), and Claimant has not challenged this finding, Pl.'s Mem. [DE-23] at 12-13.

10

where both the A and B criteria must be met.

With respect to the B criteria, Claimant states only that "[a]s the result of plaintiff's memory loss and confusion, his spouse's sworn testimony more accurately reflects his limitations." *Id.* As pointed out by Defendant, there is no testimony in the record from Claimant's spouse, Def.'s Mem. [DE-25] at 26, and Claimant testified at the administrative hearing that he is single and lives with his girlfriend (R. 35) who did not testify at the hearing (R. 28-56). Claimant fails to address the B criteria in any meaningful way, and it is not enough to simply charge the ALJ with error. *See Rowe*, 2008 WL 4772199, at * 1 ("While arguing that the ALJ failed to articulate why her medical impairments do not combine to meet a listing requirement, Plaintiff fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment."). Accordingly, Claimant has failed to demonstrate error regarding the ALJ's Listing 12.04 and 12.08 determinations.

## B.     The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a

claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

In *Mascio v. Colvin*, the Fourth Circuit explained that S.S.R. 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, — F.3d —, 2016 WL 3349355, at *2 (4th Cir. June 16, 2016) (quoting *Mascio*, 780 F.3d at 636 (quoting S.S.R. 96-8p)). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

In assessing Claimant's RFC, the ALJ considered Claimant's hearing testimony, explaining why he found it not entirely credible, a third-party statement submitted by Claimant's girlfriend, the

12

medical evidence of record related to Claimant's physical and mental impairments, the opinion evidence, and a decision on a prior SSA claim filed by Claimant. (R. 17-20). The ALJ imposed a highly restrictive RFC of sedentary work with both exertional and nonexertional limitations. (R. 15-16). Claimant asserts that he cannot perform work at any exertional level and that the ALJ erred in weighing the opinion evidence. Pl.'s Mem. [DE-23] at 14-20. However, the evidence cited by Claimant is not in the administrative record and appears to relate to another case, e.g., treatment notes from Dr. Edwin Hoeper and Dr. Lonnie Sansbury, testimony of Mrs. Delois Thompson, VE testimony from Dr. Evans (Julie Sawyer-Little was the VE in this case), opinions from Dr. Hoeper, Dr, Sansbury, Dr. EJ Burgess, and Jenna Jamison, M.A., a prior SSA decision dated April 12, 2011 (the prior decision in this case was from October 21, 2011), Global Assessment of Functioning ("GAF") scores of 35 and 40 (the GAF scores in this case range from 46 to 55), and a disability determination by the Department of Veterans Affairs. *Id.* Defendant raised Claimant's error in her memorandum in support of motion for judgment on the pleadings, Def.'s Mem. [DE-25] at 23-25, but Claimant failed to file a corrective response or to take other action to remedy the deficiency. Accordingly, Claimant has failed to demonstrate any error regarding the ALJ's RFC determination.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-22] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be ALLOWED, and the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 8, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must

conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins***, 766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 25 day of July 2016.

Robert B. Jones, Jr.
United States Magistrate Judge